Good morning, Your Honor. May it please the Court. My name is Jim Park. I'm here on behalf of Mr. Gauna-Mendoza, who is currently in the custody of the United States Bureau of Prisons, serving a 108-month sentence for a conviction for violation 81326, either for entry or found in, and that is the crux of the first issue of the case. Prior to the trial, government elected to proceed only on found in aspect of the charge. However, when the jury was instructed, the trial judge defined the elements in a disjunctive form of either found in or entry. So there was no unanimous verdict as to whether Mr. Gauna-Mendoza committed the entry aspect of the crime or the found in aspect of the crime. I knew that the government had dropped the attempt issue. You're saying it also dropped the entry? That is correct. Just prior to jury trial, the government informed the court that they were going to proceed only on found in aspect of the charge. The government filed a supplemental Rule 28J letter citing Jimenez-Borja, which states that there was an error, it was a sloppy trial, a very similar issue as Mr. Gauna-Mendoza. Mr. Gauna-Mendoza, unfortunately, chose to go pro per, so he didn't object to a lot of these jury instructions. So your argument, I take it, is no longer that it's a duplicitous indictment. Your argument is it's bum instructions. It was, because he actually did object to it being a duplicitous indictment. It was denied. But that error was actually cured by the government electing. So the argument before us that you're telling us now is your position is not that it's a duplicitous indictment problem, but it's an error in instructions problem. That is correct. It becomes a plain error analysis. Okay. But why is that, though? I want you to explain why is that. Was the indictment duplicitous? I believe under the current case law, Pacheco Medina... How about at the time... At the time that he was charged, yes, it was duplicitous, because he was charged with three distinct crimes in one charge, one... Now, we know from Ramirez-Martinez that there's one way the district court can avoid any problems by when the government either elects to go on one or the court, at the time the matter is submitted to the jury, instructs on one. That is correct. All right. If they give a specific unanimity instruction. And that's the way in which you can correct a duplicitous indictment. That is correct. Okay. So here the government said, okay, we'll elect to go on found in. That is correct. All right. Now, the district court judge gave an alternative instruction. That is correct. Why does that correct... If the indictment is duplicitous over here, why does that faulty instruction correct the problem? I mean, I don't see... He made an objection. I don't see why it's... Well, I guess our argument would be better than there was no cure. The... I mean, maybe I should have the foresight to see the court's argument. There was no cure. That the indictment itself was faulty. By the judge fixing the... By the government electing, it was partially cured. Then the judge reinstituted the charges, made the indictment duplicitous. So in that way, maybe it's an even better argument for Mr. Ghana-Mendoza. He perhaps did a better job representing himself pro per, and that there should be a better reason for overturning his conviction itself. Well, it says the elements are the way you cure it. The government elects between the charges or the court properly instructs. And you're telling us the government did elect between the charges. That is correct. And then the court improperly instructed. That is correct. It's a very similar situation, a case that was cited in my opening brief. I believe it was in Aguilar. The government elected, then the court reinstated the duplicitous indictment, and this court in United States v. Aguilar vacated the conviction and remanded it for further proceedings. Because the judge, the duplicitous indictment was uncured by the judge and was an error on the part of this trial judge. Well, the issue you brought before us in the opening brief appears to focus on the duplicitous indictment. I don't see in the opening brief an argument based on instruction. We get to instruction later with regard to what was put before the jury, but the argument, as I understand it, you're presenting is the indictment issue. That is correct. I'm actually trying to represent two issues, trying to keep it shorter into one brief. There's two. It's sort of the problem with the statute, too, though. It tries to cover multiple bases, and here we are. Just watching the case argued before the court, it seems like this is a recurring problem, but that's the case law. It's set that these are three distinct crimes. I know the government is insisting that Ramirez-Martinez be overturned, basically, that it was wrongly decided. Well, at least so we know where you are, in 25 words or less, what actually is your point, that it's a duplicitous indictment or that it's a misconstruction or both? Both. Okay. I saved my 24 words for the next argument. The second argument, Your Honor, is the ex parte issue. Let's go back to the first argument. Okay. What possible difference can it make in this case? We're not talking about attempt here. We're talking about entry or found in. And found, the way our case law has indicated, that reentry is part of being found in for purposes of the statute. What possible difference could it make with regard to your client? Your Honor, I believe there's actually, United States v. Pena-Hyme talks about, you can actually commit the entry of found in without committing the crime of entry. So Pena-Hyme, the precedent, states that there is a way to commit the crime of found in without entry. So it does make a difference in this case. The jury could have either determined that he was either found in or other portion of the jury could have determined that he entered. So that was a misconstruction on the part of the trial court. With regard to the facts of your client's case and the defense he put on, what possible difference could it make? I think that we're speculating as to evidence what the jury could have decided. And we don't know. Is it? No. Okay. If we're in the world of plain air, the facts of the case may make a significant difference to the outcome. But if we're in the world of direct review, a pain over review on the duplicitous indictment, then the facts don't really make a whole lot of difference. That is correct, Judge. And regarding, thank you. Regarding the ex parte issue, this is, I just believe there's a really wrong done by the trial judge as to the, Mr. Ghana-Mendoza's ex parte application for a subpoena. He filed that ex parte. What possible admissible evidence could that witness have presented? At this point, it would be speculating. I do not. Then what is there to complain about? We have to have some speculation. We have to have some reason to think that witness had something to say. And your client refused to say. So is the judge supposed to grant every subpoena that's asked for just because I think this guy might have something to say, but I'm not going to tell you what it is? I think the judge should have excluded the prosecutor instead of sending the prosecutor a copy of the subpoena request and instructing the prosecutor to file a response. I mean, that was error in itself. There was an ex parte application, but the trial judge ignored that. Secondly, if I were to speculate, maybe the witness could have provided some admissions by the government that, you know what, he actually had permission to be in the United States. We don't know that. And I don't think I should be in a position or Mr. Ghana-Mendoza should be in a position where he has to reveal that. The only remedy possible is to remand it, have an ex parte hearing, and have Mr. Ghana-Mendoza explain what he could have proffered at trial. He just refused to do it in front of the prosecutor. That's what happened. And it was an error for the judge. And the government persisted in the error by participating in the subpoena issues. I have about one minute, Your Honor. I'd like to reserve that for rebuttal. Thank you very much. May it please the Court. My name is Joe Kohler, and I represent the United States in this case. Yes. I was counsel in the trial court as well. This case is about plain error. The indictment did charge entry, attempted entry, and being found in the United States. The government cured the alleged duplicity in this case by electing the found-in charge among the three possible ways of violating the statute that were set forth in the indictment. In electing found-in, the government does not drop entry. It cannot drop entry. The cases of this Court are very clear that entry is embedded in every single found-in offense. Entry, but not necessarily the crime of entry. Excuse me? Entry, but not necessarily the crime of entry. That is correct. But the government must prove entry in every single case in order to have a found-in, and that includes the Pena-Jaime and the Quintana Torres cases. The entry becomes effective once that entry is accomplished by means of voluntarily becoming a way of official restraint. If this case is decided on the basis that what went down at trial did not cure the duplicative nature of the indictment, then we reverse, period. Right? I don't believe that is the case, Your Honor. Harmless error has to enter into the analysis. What do you do with Ramirez-Martinez, which said, we don't look at the evidence, we don't look at anything. If it's duplicative and it's not cured in one of the two magic ways, we reverse. What do you do with that? In this case, the evidence was overwhelming. That's not my question to you. My question to you is, what do you do with our case that said, we don't care about the evidence, we don't care about anything. If it is duplicative and not cured in one of the two magic ways, we reverse, period. That's my question. Don't tell me about the evidence. If that's what the case says you must do, then that is what you must do. Do you know if that's what the case says or do you just take my word for it? I'm taking your word for it. I've read the case a number of times. That's really dangerous. Well, I've read the case a number of times. The Supreme Court won't do that. I don't read it exactly that way, and that's why I'm saying I'm going to take your word for it. Okay. Because in that case, the Court mentioned the existence of possible juror confusion about whether the defendant in that case actually transported people in the United States or merely attempted to transport people in the United States and that there was a possibility of juror confusion there. The Court says this. As a fallback position, the government claims that the duplicity error was harmless because the evidence was overwhelming that Ramirez, et cetera, et cetera. I guess I should take your word for it. That's what they said. And then they said, but we don't go there. Well, there are a number of things to point out here. Number one, as I stated, this Court has held repeatedly that being found in the United States cannot occur without an entry, and in those circumstances, the found in and the entry charges are not duplicitous with respect to each other, duplicitous. I've usually pronounced it that way. And because the two terms go hand in hand in every single reentry prosecution, you can find perhaps that attempt would be a separate and distinct charge from the found in or the entry following Ramirez-Martinez, but limit Ramirez-Martinez to those particular circumstances because attempted entry and entry require different proof of intent. And I would respectfully submit, and obviously this Court is bound to follow Ramirez-Martinez, but I would respectfully submit that that decision was wrong in finding that distinction in holding an indictment as duplicitous. And the reason for saying that is the fact that this Court has multiple times said that 1326 sets forth three separate offenses in the context of describing the different ways that one can violate the statute does not mean that it was saying that for purpose of declaring an indictment duplicitous in that context. And so I'll limit my remarks to that. But getting to the two offenses, the two methods of entering or violating the statute, entry and being found in, they go hand in hand in every single case. You cannot have an entry without being found in the United States. Other way. You can't have an entry without being found in. And that's why you have three versions. But the government can't prove it. But you can't. Well, you could. You could prove he was there and he left, but you didn't catch him in the United States. But you're right with regard to the other way around, which is the one that matters here. You can't have a found in without an entry. That is absolutely correct. But it doesn't have to be an illegal entry. You may not have committed the crime of entry. Oh, I think it does. But you entered. Doesn't it have to be? If someone comes in legally, then he's not going to be illegally found in. What you can't have is somebody who enters involuntarily. What you have to prove is that he didn't come across at the point of a gun. Isn't that correct? That is correct. That is not correct, Consul. If you're unconscious, drugged out, and brought into this country, you have not committed the crime of entry. That's right. It's involuntary. It's involuntary. If you wake up and decide, I think I'll stay here and wander around in the country for the next two years, you can still be found in. But you certainly had to enter. That is correct. But the point I'm trying to make here is this. The point at which you wake up in the United States and decide to stay is the point at which your entry becomes effective. That is when you have entered the United States and you subsequently become found in the United States. And in the former case that you described, someone who enters the United States and then leaves without being found, the government must prove beyond a reasonable doubt the identity of the person who entered and then left. And without finding somebody in the United States, it is wholly unrealistic to expect that the government would be able to charge that person and prove that charge beyond a reasonable doubt. He maybe came in and talked to the bishop and the priest and said, I'm Ramon Vazquez, and I just snuck across the border, and I'm here, and I want you to know that I want to stay in this country forever. And the priest says, well, let me call in the rest of the parish. And they all come in, and he makes this announcement in church, and everybody says to him, you know, you better leave before they catch him, and he does. Even in that case, you couldn't prove it beyond a reasonable doubt? The government would still have to prove that the person who came in and spoke with the bishop and so on was the person who was named in the warrant of removal and whose thumbprint and photograph appeared on that warrant. Well, let's say he said he was. Suppose he admits it. He's an honest man. You finally grab him, and he's an honest man. He says, yeah, I was that guy. The next thing, of course, that the government would have to do would be to obtain that person from the place to which he left. And if the person were to come back into the United States, that would be the charge that would be in front of the court. So an FBI agent grabs him and drags him across the border. Hey, you know, we know that kind of thing can happen. The realistic scenario is this. The defendant crossed the border. He came across the Colorado River where it was dry. Agent Pedro Gomez found him in the United States. That is how the evidence was presented to the jury. That is how the government explained the case to the jury. The government explained the case in the opening statement that it must prove that the defendant voluntarily entered the United States in order to prove the found in charge. The government came back in the closing argument and made the same explanation to the jury so that the jury fully understood that it must find entry in order to convict the defendant of found in. Didn't the government and the court both tell the jury that you may either find he was found in or that he entered? The court told the jury that. Didn't the government say something like that in argument? The government informed the jury very explicitly that the entry was something that was embedded in the found in and that the jury must find the entry in order to convict on the found in. The real problem here, though, is the argument is based on the indictment that it was duplicitous. Well, the defense makes that argument. The government made the election of the charge, which is exactly what is set forth in Ramirez-Martinez. And, again, the entry and found in charges are not duplicitous. Then why didn't you object to the instruction at the end? Why didn't you just tell the judge? That's obviously not in the record, but to be honest with you, Your Honor. You didn't notice it? No. Viewing the two terms as synonymous is why. Okay. Because the two can't exist, one can't really exist without the other in a realistic scenario. Okay. Does the court have any further questions? Thank you. Thank you. At the final pretrial conference, the government, without any prompting, notified the judge. It's an excerpt, page 23, on September 30th, just a day before jury selection. Government states, and the government will be electing to proceed on a found theory in the case. They chose to go with one charge. There's a number of cases that's been decided by this court that 1326A encompasses three distinct offenses. Let me ask you this. Suppose the indictment had just alleged found in. And then at the time of the jury instructions, in setting forth the elements of the offense, one of the elements was the defendant was found in it, was entered the country. Would that be a problem? That could be a problem because the defendant didn't object to it. It would be amendment or variance of the indictment, or it would probably be argued from a defense perspective, it would be argued as an amendment to the indictment, and it would be subject to plain error analysis. That was the case that was cited by the government. If I could, Your Honor. It's Jimenez-Borja, which was their Rule 28 jiggy letter, that was the situation that happened. However, in that particular case, the verdict form only instructed, and the instruction was, the jury was instructed in only one crime. It was the wrong instruction, but they were only instructed in one crime. Whereas in this particular case, they were instructed as two crimes. The disjunctive was used instead of and. The jury was instructed that it was either found in or entered. And that would not have solved the problem, and it would be an error. The conviction should be reversed. Thank you. The government has acknowledged that the instructions did have both, but it's taken the position that the government, in making its presentation, after it elected to go with found in, was consistent in staying with found in. Is that contrary to your understanding? No, Your Honor. I believe it goes to Judge Fernandez's question. If you follow Ramirez-Martinez, we can't even get there. Thank you. All right. The matter will stand submitted. Thank you very much. Thank you. The next case for argument is United States v. Perez.
judges: Fernandez, Paez, Clifton